IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEFFREY A. PESTKA, | ) | 4:04CV3317 |
| | ) | |
| Plaintiff-Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| FRED BRITTEN, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

Jeffrey A. Pestka ("Pestka") was charged with first degree murder. He was initially represented by appointed counsel. The trial court twice found that this lawyer provided effective assistance to Pestka. Despite this, the trial court appointed new counsel for Pestka. Represented by new counsel, Pestka twice sought leave to withdraw his plea, and was twice denied. Pestka has now filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 (filing 1), seeking relief from the consequences of his plea agreement. Pestka primarily asserts that he lacked mental competency to waive counsel or to plead, and that his second lawyer (who represented him on appeal) was ineffective for failing to assert on direct appeal that his first lawyer was ineffective for failure to assert that his waiver of counsel and plea were invalid because he lacked mental competency. For the reasons set forth below, I deny Pestka's petition.

## I. BACKGROUND

Although I detail the salient facts with citations to the record later in this opinion, I here provide a chronological overview to provide a context for explaining Pestka's habeas claims.

- Pestka is initially represented by appointed counsel (Original Trial Counsel) on a charge of first degree murder.

- Pestka waives his right to counsel after a <u>Faretta</u>[1] hearing held April 11, 2000.  Trial judge finds counsel had rendered effective assistance but Pestka waives counsel because he disagreed with counsel's strategic decisions.  Pestka briefly mentions that he had three years earlier been diagnosed as paranoid schizophrenic, and alludes to counsel's alleged failure to investigate mental health records or assist in obtaining schizophrenia medication.  Trial court judge makes statement which state postconviction court characterizes as an *"implicit finding" that Pestka was mentally competent*.

- Pestka appears pro se for a three day period during which he accepted a prior offer to plead no contest to second degree murder.

- On April 14, 2000, Pestka accepts reappointment of Original Trial Counsel for purposes of entering a plea, and consults with that lawyer for nearly an hour before entering plea.

- At close of April 14, 2000 plea hearing, trial court accepts the plea.

- Pestka seeks to withdraw his plea in a June 29, 2000 letter to the court, asserting the plea was tainted by ineffective assistance of Original Trial Counsel prior to and at the plea hearing.

- Trial court suspends appointment of Original Trial Counsel and appoints another lawyer from the Nebraska Commission on Public Advocacy ("Commission/Appellate Counsel") to represent Pestka on the question of ineffectiveness of counsel.  (Later, Original Trial Counsel is

---

[1]Shorthand for a hearing held to determine whether a criminal defendant seeking to waive the right to counsel has "knowingly and intelligently" waived his or her right to counsel, which includes ensuring that the accused is "aware of the dangers and disadvantages of self representation."  <u>Faretta v. California</u>, 422 U.S. 806, 835 (1975).

discharged by the trial court although the trial court found he had rendered effective assistance.)

• Extended hearing regarding alleged ineffectiveness of Original Trial Counsel is held over three days in September, 2000. Several grounds of ineffectiveness were considered, *but the question whether Trial Counsel was ineffective for failure to assert that Pestka lacked mental competency to waive counsel or to plead was not raised.*

• Trial court finds Original Trial Counsel is not ineffective on March 12, 2001and denies request to withdraw plea.

• Eleven days later, on March 23, 2001, with representation by Commission/Appellate Counsel, defendant files a second motion to withdraw plea, asserting three reasons why it was not voluntary. *Again, none of the reasons relates to alleged lack of mental competency of defendant to waive counsel or to plead.*

• After another hearing held March 26, 2001, a second motion to withdraw the plea is denied on March 28, 2001. Pestka is later sentenced.

• On direct appeal, defendant asserts through Commission/Appellate Counsel that trial court erred when it found Original Trial Counsel's performance was not deficient and when it found that he had not met his burden of proving by clear and convincing evidence a fair and just reason to withdraw his no contest plea. *Mental competency issues are not raised*.

• Direct appeal is denied. Although the sufficiency of the no contest plea was not specified as error, appellate court reviewed sufficiency of the plea and found that all requirements of <u>Nebraska v. Irish</u>, 394 N.W.2d 870 (Neb. 1986) were met. It also found that Original Trial Counsel's performance was not deficient or ineffective.

• In a 77-page pro se postconviction petition, Pestka asserts that (1) his waiver of counsel and plea were invalid for lack of mental competency,

-3-

and (2) he received ineffective assistance of Appellate Counsel in that he failed to raise issue of ineffectiveness of Original Trial Counsel in failing to raise the competency issue as it affected waive of counsel and validity of plea.

• State court denies postconviction claim, largely because it finds that the matters were previously determined on direct appeal.

### *Claims Raised*

Upon review of Pestka's habeas petition, as clarified by his briefs and other submissions, I understand Pestka to assert claims that he was denied his rights to a fair trial, due process, and the effective assistance of counsel in three ways:

1. He lacked the mental competency necessary to waive Original Trial Counsel or to enter a no contest plea, as he had been previously diagnosed as paranoid schizophrenic and was not taking prescribed medications for that condition. In a related argument, Pestka asserts that the trial court erred in failing to obtain a psychiatric evaluation. Pestka asserts that Appellate Counsel was ineffective for failing to raise on direct appeal the question whether Original Trial Counsel was ineffective for failure to assert these mental competency arguments in the trial court.

2. His waiver of counsel was invalid and involuntary because it was based on the trial court's erroneous finding that Original Trial Counsel was *not* constitutionally deficient. That finding was allegedly erroneous because (a) it was based on the trial judge's personal opinion of Original Trial Counsel and not on that lawyer's actions in representing Pestka, and (b) it was based on inadequate evidence because the trial judge would not allow Pestka to fully explain his dissatisfaction with counsel.

-4-

3.       His plea was invalid because it was inextricably linked to his invalid waiver of trial counsel.  Pestka asserts that Appellate Counsel was ineffective for failure to assert on direct appeal that Original Trial Counsel was ineffective for failure to raise this claim.

(Filings 1, 17, 20, 25.)  With these claims in mind, I now describe key state court proceedings.

### *April 11, 2000 Hearing on Request to Discharge  Counsel:* *The First Hearing on Ineffectiveness of Original Trial Counsel*

On April 11, 2000, the trial court held a hearing on Pestka's motion to discharge Original Trial Counsel.  The judge explained that if he found that lawyer to be competent, and accepted Pestka's discharge of that lawyer, no other lawyer could be appointed and Pestka would have to represent himself or hire his own counsel.  (Ex. 20, Vol. III, at 384, 404, 407.)[2]  Pestka wanted to explain in detail his concerns about Original Trial Counsel's representation of him, but did not want to do so in the presence of any lawyers for the prosecution.  (Id. at 404-05.)  The trial judge was unwilling to have an ex parte hearing, and instead required Pestka to explain in general terms why he was dissatisfied with the performance of his lawyer.  (Id. at 384-85, 405, 408-09, 411.)  Pestka indicated he was dissatisfied with counsel's handling of his defense, that counsel had failed to contact witnesses, and counsel had otherwise not taken action on information he was given by Pestka or provided by police officers.  (Id. at 384-85, 404-05, 411.)  The trial judge had an extended colloquy with Pestka.  (Id. at 386-411.)  The following exchange concerned Pestka's mental state.

---

[2]All state court records are contained in this court's filing 15, and there are 21 exhibits within filing 15.  For simplicity, I cite the state court records solely by the exhibit and page numbers and omit continued reference to filing 15.

-5-

THE COURT:          Are you under the influence of any alcohol, drugs, narcotics or other pills?

DEFENDANT:          I am taking a prescription medication.

THE COURT:          What are you taking?

DEFENDANT:          Paxil.

THE COURT:          And what's Paxil for?

DEFENDANT:          I believe it's an antidepressant.

THE COURT:          And that must mean that you have been under psychiatric care?

DEFENDANT:          Yeah.  I'm not – that's one of the things I have–I've let Mr. Hays have all my releases to the mental hospitals that I was in Iowa.

THE COURT:          Okay.

DEFENDANT:          And he has done zero to help me get the correct medication I'm supposed to be taking and –

THE COURT:          Have you been told that you suffer from any mental disabilities?

DEFENDANT:          (No response.)

THE COURT:          Do you understand my question?

DEFENDANT:          Yeah.  Paranoid schizophrenia.

THE COURT:          Okay, and when was that?

DEFENDANT:          Ninety-seven.

-6-

THE COURT:     Were you told that you should be taking medication?

DEFENDANT:     Yeah.  I couldn't afford it.

THE COURT:     Any other diagnosis?

DEFENDANT:     I was going to a place called Vera French in Davenport, Iowa, but I felt that my alcohol abuse was getting to the point where I needed to move to Nebraska, maybe around some family, to try to curve (sic) what was happening.

THE COURT:     Okay.

DEFENDANT:     And I was on–that's–that psychiatrist put me on Paxil for, like, the first few weeks, just to stabilize me, and wanted me to come back.  But, without a driver's license, and living 40 miles from the clinic, I couldn't get there.

THE COURT:     When was the last time you took Paxil?

DEFENDANT:     This morning.

THE COURT:     What does it do for you?  I mean, how does it make you feel?

DEFENDANT:     More like, I would say, a sedative.

THE COURT:     Does it affect your ability to understand what's going on around you?

DEFENDANT:     No.

-7-

| THE COURT: | So far–I mean, I've been mumbling here about different things. Have you understood everything I've said? |
|---|---|
| DEFENDANT: | I think so, yes. |
| THE COURT: | Okay. So this pill doesn't affect your ability to comprehend what's happening around you? |
| DEFENDANT: | No. I would say it helps me cope better. |

(Id. at 386:21-389:3.)

The judge had an extended discussion with Pestka regarding his understanding of court proceedings and his ability to represent himself. Peskta indicated that he still wished to discharge Original Trial Counsel, but did not feel he was competent to represent himself, and wanted the court to appoint another attorney. ( Id. at 404:17-24.) The judge again explained that if he found that Original Trial Counsel was competent, and if Pestka nonetheless elected to discharge Original Trial Counsel, then no other attorney would be appointed and Pestka would have to represent himself. Pestka again stated that he understood this and was "willing to take that risk."   (Id. at 406:3-20.)[3]

At the close of the hearing, the trial judge found that based upon his "knowledge and experience," Original Trial Counsel was a competent attorney who met community standards for the defense of a first degree murder case. (Id. at 408.)

---

[3]It was apparently at this point that Pestka developed his plan to obtain his choice of counsel by pleading, being sentenced, and raising ineffectiveness of Original Trial Counsel on direct appeal with the assistance of the prison library and a jailhouse lawyer. This plan was not revealed to the trial judge until much later, after the Commission attorney had been appointed and in a March 23, 2001 hearing on Pestka's second motion to withdraw his plea. I address this plan later in this opinion.

-8-

He also accepted Pestka's waiver of counsel, finding as follows:

> I do find beyond a reasonable doubt that Mr. Pestka understands his
> rights, that he understands he has a right to be represented by counsel,
> that he freely, voluntarily, knowingly and intelligently waives that right,
> that he understands the consequences of his waiver and I accept his
> waiver. I do– ***there's nothing to lead me to believe he's not competent.***
> He may not understand the [trial] procedure, but he understands he
> doesn't understand the procedure, and, understanding all that, he still
> wants to represent himself.

(Id. at 410:8-18 (emphasis added).)  Original Trial Counsel was appointed as standby
counsel.

### April 14, 2000 Plea Hearing

Sometime between April 11 and April 14, 2000, and while he was representing
himself, Pestka accepted an offer that had been extended earlier and agreed to plead
no contest to a charge of second degree murder.  On April 14, 2000, Pestka, the
prosecutor, and standby counsel appeared for a plea hearing.  Again explaining the
perils of a murder defendant representing himself, the trial judge strongly urged
Pestka to accept representation by Original Trial Counsel to proceed with the plea and
subsequent sentencing.  (Id. at 413:22-414:11.)  Pestka agreed to have Original Trial
Counsel reappointed and he was reappointed.  The hearing was recessed to permit
Pestka and counsel to consult.  After nearly an hour, the plea hearing resumed.  (Id.
at 414:12-415:6.)

There was an extended colloquy between the court and Pestka.  (Id. at 419-30.)
Pestka repeatedly acknowledged that he understood his rights as the judge explained
them to him.  (Id. at 419-29.)  Original Trial Counsel also advised the court that he
had discussed Pestka's rights with him and that in his opinion, Pestka understood his

rights. (Id. at 443.) Pestka stated that he had taken his antidepressant medication that morning. The trial judge questioned Pestka about his medication and its affect on his ability to understand the proceedings. Pestka responded that he understood what Original Trial Counsel was saying during the recess, that the medication had no adverse affect on his ability to understand what was going on around him, that he was 31 years old and had attended one semester of college, that he was diagnosed with paranoid schizophrenia in 1997, diagnosed with "manic depressant (sic)" at an unknown time, and earlier had been prescribed Haldol but quit taking it. (Id. at 419-21.) The court found as follows: "Mr. Pestka is following my questions, he is giving suitable answers to the questions which I've asked, physically, including his eyes[,] speech and hearing, he appears to be normal, and I conclude that he is not, at this time, affected by alcohol, narcotics or other pills." (Id. at 421:22-422:2.) At the conclusion of the hearing, the judge found beyond a reasonable doubt that "Mr. Pestka understands his rights and freely and voluntarily waives them, that he's acting voluntarily, that he understands the charge against him as set forth in the Amended Information, and the consequences of his plea, and that his plea is freely, voluntarily, knowingly and intelligently made" and accepted the plea. (Id. at 444:7-13.)

### First Plea Withdrawal Request

On June 29, 2000, the court received a letter from Pestka. (Ex. 10, pages 14-15.) A hearing was held on July 11, 2000 to clarify what Pestka was requesting. Pestka explained that he wanted to withdraw his plea because he had ineffective assistance of counsel prior to April 11 and at the April 14 plea hearing. (Ex. 20, Vol. IV, at 465:8-24.) The court entered an order "suspending" the appointment of Original Trial Counsel and appointing the Nebraska Commission on Public Advocacy ("Commission/Appellate Counsel") to represent Pestka on the limited question of ineffectiveness of Original Trial Counsel. A hearing on the issue of ineffectiveness was set for September 8, 2000. (Ex. 10 at 16.)

-10-

That hearing on the effectiveness of Original Trial Counsel (the second hearing on this issue) was ultimately held on three separate days: September 9 (Ex. 20 , Vol. III, 473-553), September 19 (Ex. 20, Vol. IV, 554-693), and September 21, 2000 (Ex. 20, Vol. IV, 694-702.)   The hearing consumed over six and a half hours.   Original Trial Counsel was extensively questioned regarding particular strategic decisions and his theory of the defense.   There were no questions regarding Pestka's mental competency.

On March 12, 2001, the court ruled on Pestka's June 29, 2000 motion to withdraw his plea, concluding in an eleven page order that:  (1) the performance of Original Trial Counsel was not deficient; (2) Original Trial Counsel did not provide ineffective assistance to Pestka; and (3) Pestka had failed to demonstrate a fair and just reason for the court to allow him to withdraw his plea.   The request to withdraw the plea was denied.   (Ex. 10 at 21-31.)

### Second Plea Withdrawal Request

Shortly after the order denying the first motion to withdraw the plea, and on March 23, 2001, Commission/Appellate Counsel filed a second motion for withdrawal of the plea.   (Ex. 10 at 32-36.)   Among other things, this second motion asserted that Pestka had entered his plea pursuant to a scheme to obtain new trial counsel and that this undisclosed scheme rendered the plea invalid.   Understanding that the trial judge had found Original Trial Counsel to be competent and thus would not appoint a different lawyer, Pestka devised a scheme to obtain a trial with counsel of his choice.   He planned to plead no contest to second degree murder, be sentenced to the Nebraska Department of Correctional Services, and from there and with non-attorney legal assistance to file a request for postconviction relief alleging that Original Trial Counsel was ineffective.   He believed his plea would be set aside and that when he was tried for first degree murder, he would have new counsel.

-11-

A hearing was held on this second motion for withdrawal of the plea on March 26, 2001 (Ex. 20, Vol. IV, 703-751.)  This second motion was denied in a March 28, 2001 order.  (Ex. 19 at 137-45.)  Among other things, the trial judge found that Pestka's scheme indicated that Pestka "comprehended exactly what was transpiring during the plea . . . ."  (Id. at 145.)

Pestka was sentenced on April 19, 2001 and filed a notice of appeal shortly thereafter.  Commission/Appellate Counsel represented him at sentencing and on direct appeal.

### Direct Appeal

As characterized by the Nebraska Court of Appeals, two errors were assigned on direct appeal:  "(1)[ t]he district court erred when it found Pestka's counsel's performance was not deficient, and (2) the district court erred when it found that Pestka had not met his burden of proving by clear and convincing evidence a fair and just reason to withdraw his no contest plea."  (Ex. 19 at 148.)  The court rejected the State's assertion that questions of ineffective assistance of Original Trial Counsel were not properly before it, finding that "based on the facts of this case, the questions of counsel's representation at all stages of the proceedings are merged into Pestka's motion to withdraw his plea, and, therefore, are to be considered by the court."  (Id. at 149.)  I understand this quoted language to mean that the state court on direct appeal considered Original Trial Counsel's representation of Pestka prior to the time Pestka first waived counsel, and also at the plea hearing when Pestka was again represented by Original Trial Counsel.  Pestka had alleged that Original Trial Counsel was ineffective because of allegedly flawed strategical decisions.  Failure to raise issues related to Pestka's lack of mental competency was not asserted as a ground for ineffectiveness.

-12-

Noting that Pestka was not contesting on appeal the voluntariness of his plea, the Nebraska Court of Appeals considered the issue sua sponte and found that the plea was voluntary.  It stated:

> It should be noted at the outset that Pestka does not contest, and the record supports, that all the requirements set forth in *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986) were met in this case. All of Pestka's rights cited in *Irish*[4] were enunciated in detail by the trial court, and Pestka's responses indicated his understanding.  In particular, it should be noted that Pestka testifed at the second hearing on the motion to withdraw that he voluntarily, intelligently, and knowingly entered his no contest plea on April 14, 2000, albeit based on his alleged problems with counsel and his father.

(Id. at 149.)

The Nebraska Court of Appeals agreed with the trial court that "counsel's performance was not deficient or ineffective and that Pestka did not demonstrate a fair and just reason for the trial court to allow the withdrawal of his plea" at *either* of the two plea withdrawal hearings.  (Id. at 161.)  In so finding, the court summarized the facts adduced at the two hearings.  It did not specifically note any evidence, or lack thereof, regarding Pestka's mental capacity to enter a plea or his competency to waive counsel.

The Nebraska Supreme Court summarily affirmed this decision.

---

[4]Irish clarified the showing needed "to support a finding that a plea of guilty or nolo contendere has been entered freely, intelligently, voluntarily, and understandingly . . . ."  394 N.W.2d at 883.

### *State Postconviction Proceedings*

The state district court (here, the "Postconviction State Court") found that Pestka raised three issues on postconviction appeal and rejected them all.  Those issues, and the findings, are as follows.

First, Pestka asserted that he "received ineffective assistance of [Commission/[A]ppellate counsel." (Ex. 19 at 116.)  The Postconviction State Court found that the alleged ineffectiveness involved failure to assert on direct appeal that Original Trial Counsel was ineffective, and reasoned that if Original Trial Counsel was not ineffective, then Commission/Appellate counsel was not ineffective for failing to raise issues regarding that lawyer's ineffectiveness.  The Postconviction State Court found that the Nebraska Court of Appeals on direct appeal found that "all aspects of the effectiveness of the defendant's court-appointed public defender [Original Trial Counsel] were, in fact, addressed and determined by the [state courts on direct appeal]," and found that Commission/Appellate Counsel could not have been ineffective.  (Ex. 19 at 117.)  However, this analysis ignores the fact that the question whether Original Trial Counsel was ineffective for failure to raise the question of Pestka's mental competency to waive counsel or to plead was not raised on direct appeal.

Second, Pestka asserted that "[t]he trial court erred in its determination that the defendant validly waived his constitutional right to counsel." (Ex. 19 at 117.)  The Postconviction State Court noted that although Pestka was represented by Original Trial Counsel at the April 14, 2000 plea hearing, he asserted in his postconviction action that the trial court's determination that he knowingly, voluntarily and intelligently waived his right to counsel on April 11, 2000 was error.  The Postconviction State Court quoted the trial court's colloquy with Pestka at the April 11, 2000 hearing at which Pestka waived counsel.  The quoted language included Pestka's disclosure of his prior diagnosis of paranoid schizophrenia (and the fact that

he was not taking the medication recommended to ameliorate that condition), his treatment for alcohol abuse in Iowa, and the fact that he was taking a prescription antidepressant which helped him cope.  The Postconviction State Court noted that before the trial court concluded on April 11, 2000 that Pestka "freely, voluntarily, knowingly and intelligently" waived counsel, it "*implicitly found that the defendant was competent to make the waiver [of counsel]*," citing the court's statement at the April 11, 2000 hearing that "there's nothing to lead me to believe he's [the defendant] not competent . . . ."  (Ex. 19 at 121 (emphasis added).)[5]

Third, Pestka asserted that he "received ineffective assistance of appellate counsel, due to his failure to object to the defendant's entry of an "invalid" no contest plea and the court's acceptance of the plea."  (Ex. 19 at 121.)   The State Postconviction Court observed that although the sufficiency of the no contest plea was not specified as an error, the Nebraska Court of Appeals nonetheless reviewed the issue sua sponte, observing that the direct appeal court found as follows:

> It should be noted at the outset that Pestka does not contest, *and the record[] supports*, that all the requirements set forth in *State v. Irish*, 223 Neb. 814, 394 N.W. 2d 879 (1986) were met in this case.  All of Pestka's rights cited in Irish were enunciated in detail by the trial court, and Pestka's responses indicated his understanding . . . . [Emphasis added.]

(Ex. 19 at 121 (emphasis by State Postconviction Court).)  The State Postconviction Court found that it could not review the sufficiency of the no contest plea, because the sufficiency of the plea was reviewed on direct appeal.  (Id.)  However, this finding ignores the fact that questions regarding Pestka's mental competency as it affected the sufficiency of his plea were not before the state courts on direct appeal.

---

[5]Although the postconviction opinion states that the exchange in question occurred on April 14, 2000 (Ex. 19 at 13), the colloquy which is quoted occurred at the April 11, 2000 hearing (see Ex. 20, Vol. III, at 386:21-389:3).

The State Postconviction Court went on to observe that the record reflected that Pestka's plea waiver was waived freely, voluntarily, knowingly and intelligently. (Ex. 19 at 121-22.)  It noted that the trial court specifically explained all of the rights noted in Irish.  Pestka acknowledged to the trial court that (a) he understood those rights, that he had ample time to discuss them with Original Trial Counsel, and (b) he was "freely and voluntarily" waiving his rights.  Furthermore, Original Trial Counsel advised the court that he had discussed Pestka's constitutional rights with him and, in his opinion, Pestka understood his constitutional rights and was waiving them freely, voluntarily, knowingly and intelligently.  Finally, at the time the trial court accepted the waiver, it found beyond a reasonable doubt that "Pestka does understand these rights, that he waives them freely, voluntarily, knowingly and intelligently, and that he understands the consequences of his waiver . . . ."  (Ex. 19 at 122.)

The Nebraska Court of Appeals and Nebraska Supreme Court summarily affirmed the state district court's rejection of Pestka's postconviction claims.

## II.  ANALYSIS

I now address each of Pestka's claims in turn.  Each must be denied.

### Mental Competency Issues

Pestka asserts that he lacked the mental competency necessary to waive Original Trial Counsel or to enter a no contest plea, as he had been previously diagnosed as paranoid schizophrenic and was not taking prescribed medications for that condition.  In a related argument, Pestka asserts that the trial court erred in failing to obtain a psychiatric evaluation.  Pestka asserts that Commission/Appellate Counsel was ineffective for failing to raise on direct appeal the question whether Original Trial Counsel was ineffective for failure to assert these mental competency arguments in the trial court, and that this claim of ineffectiveness of Appellate Counsel excuses

his failure to fairly present the claim on direct appeal.  I agree that Pestka has "excused" his failure to "fairly present" the question of his mental competency on direct appeal–but I disagree with Pestka on every other aspect of this mental competency claim.

The competency standard for waiving the right to counsel or pleading guilty is the same as the competency standard for standing trial.  Godinez v. Moran, 509 U.S. 389, 395-400 (1993).  The defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him."  Id. at 396  (quoting Dusky v. United States, 362 U.S. 402 (1960)).  Put another way, the defendant must have the mental capacity to "understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense . . . ."  Id. (quoting Drope v. Missouri, 420 U.S. 162, 171 (1975).)

The same judge who presided over Pestka's trial denied Pestka's state postconviction claims.  In denying the postconviction claim, this judge found that he implicitly found that Pestka was competent to waive counsel on April 11, 2000.  The Postconviction State Court noted that before the trial court concluded on April 11, 2000 that Pestka "freely, voluntarily, knowingly and intelligently" waived counsel, it  "implicitly found that the defendant was competent to make the waiver [of counsel]," citing the court's statement at the April 11, 2000 hearing that "there's nothing to lead me to believe he's [the defendant] not competent . . . ."  (Ex. 19 at 121.)

On habeas review of a substantive competency claim, the habeas petitioner has "the burden of persuasion to demonstrate, by a preponderance of the evidence, that he was incompetent."  Lyons v. Luebbers, 403 F.3d 585, 593 (8th Cir. 2005). "Because competence to stand trial is a factual issue . . . .[the federal habeas court] presume[s] the state court's finding of competence is correct . . . .  "  Id.  Pestka has

4:04-cv-03317-RGK-PRSE   Doc # 28   Filed: 04/10/07   Page 18 of 23 - Page ID # 171

proffered no evidence outside the colloquies with the trial judge included in the original trial record to meet his burden of overcoming the presumption that the trial judge's determination of his competence was incorrect. This evidence is insufficient to demonstrate that he was incompetent.

Even if this deferential standard did not apply and I review the record de novo, I find that based upon the evidence before the trial judge, Pestka was competent to waive counsel and to plead. I note examples demonstrating Pestka's competency.

First, at the April 11, 2000 hearing on Pestka's effort to disqualify Original Trial Counsel, Pestka clearly understood that if he persisted in his efforts to discharge Original Trial Counsel, there was a risk that the trial judge would find that lawyer to have given him effective assistance and would refuse to appoint a different lawyer to represent him, with the result that Pestka would have to represent himself. Pestka stated that he was "willing to take that risk." (Ex. 20, Vol. III, at 406.) At the conclusion of that same hearing, the trial judge found that Pestka's responses to his questions indicated that Pestka understood enough about trial procedure to "understand[] he doesn't understand the procedure." (Id. at 410.)

Second, at the April 14, 2000 hearing at which he pled no contest, Pestka accepted the trial judge's recommendation to accept reappointment of Original Trial Counsel for purposes of entering his plea. Pestka consulted with that lawyer for nearly an hour and was able to participate in his defense. Pestka himself repeatedly stated that he understood his rights as the trial judge explained them to him. (Id. at 419-29.) Original Trial Counsel also advised the court that he had discussed Pestka's rights with him and that in his opinion, Pestka understood his rights. (Id. at 443.)

Finally, Pestka had been advised of the perils of representing himself on a murder charge, and did not think he was capable of effectively representing himself. So, as Pestka himself claimed in his second attempt to withdraw his plea, he devised

-18-

a plan to plead no contest to second degree murder, be sentenced to the Nebraska Department of Correctional Services, and from there with non-attorney legal assistance, to file a request for postconviction relief alleging that Original Trial Counsel was ineffective. Then, when he was retried, he would have new counsel. The fact that Pestka formulated this plan indicates that Pestka understood the nature of the proceedings against him and was able to assist in his own defense.

Pestka also asserts that the trial judge erred in failing to obtain a psychiatric evaluation of his competency in light of his assertion that he had three years earlier been diagnosed as a paranoid schizophrenic and was not taking the medication prescribed for that condition.[6] Though this claim was inartfully raised in Pestka's state postconviction petition, the State Postconviction Court did not rule on this issue, so there is no state court finding on this question which must be given deferential review.

This is a procedural competency claim. A criminal defendant has a separate procedural due process right to a competency hearing. Reynolds v. Norris, 86 F.3d 796, 800 (8th Cir. 1996). On habeas review of a procedural competency claim, the question is whether "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to the defendant's competency to stand trial." Id. at 800-01. The habeas petitioner has "the burden to prove that objective facts known to the trial court raised a sufficient doubt to require a competency hearing." Id. at 801. "[T]he

---

[6]Though this claim was not asserted on direct appeal, Pestka has alleged that Original Trial Counsel was ineffective for failing to raise questions regarding his competency to waive counsel and to plead, and has alleged that his failure to "fairly present" this claim on direct appeal is excused by his assertion that Appellate Counsel was insufficient for failure to assert this particular ground for insufficiency of Original Trial Counsel.

Supreme Court has not described the precise quantum of proof necessary to establish sufficient doubt," but has indicated that these factors should be considered:  "(1) evidence of irrational behavior by the accused, (2) the accused's demeanor at trial [or when otherwise before the court], and (3) any prior medical opinion as to the mental competency of the accused to stand trial."  <u>Id.</u> at 800.

The only evidence of Pestka's state of mind at the time he waived counsel and pled no contest to a lesser charge is the same information available to the trial court. Pestka has brought forth no other evidence.  This evidence shows poor decisions by Pestka, but not irrational behavior (for example, his scheme to plead guilty and raise ineffectiveness of counsel in a postconviction action).  His demeanor at trial, which I have previously noted, does not create doubt as to whether Pestka was competent. At most, Pestka has shown that he had a history of mental illness and an inconsistent pattern of taking prescribed medication for that illness.  This would not have caused a reasonable judge, situated as was Pestka's trial judge, to have doubted Pestka's competency to stand trial.

### *Waiver of Counsel*

Pestka asserts that his waiver of counsel was invalid and involuntary because it was based on the trial court's erroneous finding that Original Trial Counsel was *not* constitutionally deficient.  That finding was allegedly erroneous because  (a) it was based on the trial judge's personal opinion of Original Trial Counsel and not on that lawyer's actions in representing Pestka, and  (b) it was based on inadequate evidence because the trial judge would not allow Pestka to fully explain his dissatisfaction with counsel.  It is unclear whether the state courts considered these claims.  I find them without merit because they are contradicted by the record, and as the record is sufficient to resolve these claims, no evidentiary hearing is necessary.  <u>See</u>, <u>e.g.</u>, <u>Johnston v. Luebbers</u>, 288 F.3d 1048, 1059 (8th Cir. 2002) (district court did not abuse its discretion in denying habeas corpus petitioner's request for an evidentiary

-20-

hearing on claim that his counsel was ineffective where record already contained facts necessary to resolve the claim).

The finding that Original Trial Counsel's performance was not constitutionally deficient was in fact based upon that attorney's representation of Pestka and not solely on the trial judge's assessment of that lawyer's ability in general. The trial judge twice made findings that Original Trial Counsel had not rendered ineffective assistance of counsel. The first finding occurred at the close of an April 11, 2000 hearing, when the trial judge found that based upon his "knowledge and experience," Original Trial Counsel was a competent attorney who met community standards for the defense of a first degree murder case. (Ex. 20, Vol. III, at 408.) The defect, if any, in this finding was cured by a second hearing on the alleged ineffectiveness of Original Trial Counsel. This second hearing consumed parts of three days, and Pestka was represented by Commission/Appellate Counsel at the hearing. Original Trial Counsel was questioned extensively regarding decisions made in representing Pestka. Voluminous written evidence was submitted at that hearing. (Ex.'s 21.10-21.12, 21.15-21.20.) The trial judge issued an eleven page order outlining the facts adduced at that hearing regarding the strategical and tactical decisions of Original Trial Counsel with which Pestka disagreed, and found that the performance of Original Trial Counsel in his representation of Pestka was not deficient and hence not ineffective. (Ex. 19 at 126-35 (March 12, 2001 order by trial judge).)

The record shows that the trial judge's finding regarding effectiveness of Original Trial Counsel was not tainted by improper failure to allow Pestka to explain in detail his dissatisfaction with Original Trial Counsel. At the second hearing on the effectiveness of Original Trial Counsel, Pestka was represented by Commission/Appellate Counsel. That attorney questioned Original Trial Counsel extensively regarding that attorney's particular decisions to act or refrain from acting. Pestka's two letters to Original Trial Counsel court describing in narrative form his dissatisfaction with that attorney's representation of him were exhibits at the hearing

on the effectiveness of Original Trial Counsel. (Ex.'s 20.10, 20.11.) There was a full record of the nature of Pestka's dissatisfaction with Original Trial Counsel.

## *Invalidity of Plea*

Pestka asserts that his plea was invalid because it was inextricably linked to his invalid waiver of trial counsel. He asserts that his waiver of trial counsel was invalid because he lacked mental competency to waive counsel, and because it was based on the trial judge's erroneous finding that Original Trial Counsel had rendered effective assistance. If Pestka was mentally competent, and if Original Trial Counsel rendered effective assistance, this claim fails. I have already rejected Pestka's claim that he lacked mental competency. That leaves the claim that the trial judge erroneously found that Original Trial Counsel had rendered effective assistance.

The State Postconviction Court found that the state courts on direct appeal concluded that the performance of Original Trial Counsel was neither deficient or defective. (Ex. 19 at 117.) This finding is entitled to great deference. 28 U.S.C. § 2254(d)(1) (a federal court may not grant a writ of habeas corpus unless the conclusions of law set forth in a state court's decision on the merits resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.") The finding that Original Trial Counsel rendered effective assistance is consistent with Strickland v. Washington, 466 U.S. 668, 687-88 (1984) (to establish ineffective assistance of counsel, petitioner must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness, and if he establishes that, the petitioner must then show that the deficient performance prejudiced his defense). Though the state courts on direct appeal may not have considered whether Original Trial Counsel was ineffective for failure to raise questions of Pestka's mental competency, I have rejected Pestka's claims that he lacked mental competency.

Original Trial Counsel cannot be considered ineffective for failure to raise a meritless claim.  Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (counsel not ineffective for failure to raise meritless issue).  As Pestka's claim that Original Trial Counsel rendered ineffective assistance is without merit, Pestka's claim that his plea was invalid fails.

### III.  CONCLUSION

For the foregoing reasons, Pestka's petition for habeas corpus must be denied and dismissed with prejudice.  Therefore,

IT IS ORDERED that the petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254 (filing 1) is denied.  Judgment will be entered by separate document dismissing the petition with prejudice.

April 10, 2007.                                    BY THE COURT:

                                                   s/Richard G. Kopf
                                                   United States District Judge